FILED

2017 JUN 15 PM 2:12

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 2:17-CV-334-FtM-99CM

PEDRO SOLTURA,

    Plaintiff,

vs.

NEW PENN FINANCIAL, LLC d/b/a
SHELLPOINT MORTGAGE SERVICING, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Pedro Soltura, by and through undersigned counsel, hereby sues Defendant Shellpoint Mortgage Servicing, and alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Pedro Soltura is a natural person over the age of 21. He is a citizen of the State of Florida and resides in Collier County, Florida. He will be referred to hereafter as "Borrower."

2. Defendant New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, (hereafter "Shellpoint") is a Delaware limited liability company with three natural persons as its managing members. Those natural persons are residents of the State of Pennsylvania. Accordingly, Shellpoint is a citizen of both Pennsylvania and Delaware, and perhaps other states where other, unknown members may reside. Shellpoint is engaged in the business of servicing federally related mortgage loans. Mortgage servicing involves the collection of mortgage payments, including allegedly delinquent mortgage payments, on behalf of the third-party creditors who own those mortgage debts.

3.  As a mortgage servicer, Shellpoint is subject to specific federal laws and administrative regulations governing its mortgage servicing activities. These laws and regulations include, but are not limited to, the Real Estate Settlement Procedures Act, (12 U.S.C.§ 2605) and Regulation X (12 C.F.R. §1024)

4.  Additionally, as a mortgage servicer, Shellpoint engages in handling the accounting, customer service, collection, and virtually all other services related to the management of the residential mortgage loans in its portfolio. For all practical purposes, Shellpoint and other mortgage servicers generally appear to borrowers whose loan they service as the "mortgagee" or "lender." However, Shellpoint has never loaned Borrower any money, purchased Borrower's mortgage debt, nor engaged in any activities that give rise to a debtor/creditor relationship or contractual relationship.

5.  Instead Shellpoint simply services Borrower's mortgage loan and many other mortgage loans as an independent contractor on behalf of the investors who actually own the debts. The vast majority of residential mortgage loans in the United States are owned by passive investors and serviced by mortgage servicers such as Shellpoint and approximately 30 other competitors. Most of these investors are mortgage securitization trusts, sometimes called "Real Estate Mortgage Investment Conduits" (REMICs), Collateralized Debt Obligations (CDOs), Collateralized Mortgage Obligations (CMOs), or secondary market participants such as the Federal National Mortgage Association (FNMA or Fannie Mae) and the Federal Home Loan Mortgage Corporation (FHMLC or Freddie Mac).

6.  As of the date of this Complaint, Shellpoint does not own Borrower's mortgage loan, accordingly, Shellpoint is not a party to various contracts that give rise to the debt or security interest at issue in this case.

7. Because Shellpoint is not a party to the mortgage loan contract, it cannot enforce the contractual jury-trial waiver provisions in the mortgage loan contract, and the contractual notice and opportunity to cure provision does not apply to Shellpoint. Furthermore, Shellpoint would not realize a financial loss if Borrower's mortgage loan were ultimately foreclosed and the collateral property sold for less than the balance of the loan. Instead, the investor that employed Shellpoint as the loan servicer would absorb that financial loss.

8. Borrower's claims against Shellpoint arise under RESPA, 12 U.S.C. §2601 *et. seq.* Accordingly, this Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

9. The acts and omissions that give rise to this lawsuit either occurred in Collier County, Florida or relate to real property and other business transactions that occurred in Collier County, Florida. Accordingly, venue is proper in this Court.

## GENERAL ALLEGATIONS

10. Borrower owns a home located in Naples, Florida. To purchase that home, Borrower obtained a mortgage loan from Impac Funding Corporation who subsequently assigned the mortgage toanother party. There is a pending mortgage foreclosure lawsuit wherein a securitization trust for which The Bank of New York Mellon serves as trustee alleges to have acquired the mortgage debt by assignment

11. Borrower's mortgage loan is a "federally related mortgage loan" as that term is defined by 12 U.S.C. §2602(1).

12. The terms of the mortgage required Borrower to maintain hazard insurance and flood insurance on the subject property. However, due to financial hardships he became unable to do so.

13. Beginning on or about November 2013 and continuing until approximately August 2015, Shellpoint obtained a series of force-placed hazard insurance policies on Borrower's property. These hazard and flood insurance policies were issued by insurance companies through the surplus lines insurance market.

14. Under the terms of the mortgage, Borrower was obligated to pay the premium associated with the force-placed insurance coverage that Shellpoint obtained. If he failed to do so Shellpoint was permitted to foreclose the mortgage against his home.

15. The premiums associated with the force-placed insurance coverage, which is considerably higher than insurance that could have easily been obtained through admitted carriers.

16. Surplus lines insurance is almost always far more expensive than insurance sold by admitted insurers.

17. Unlike insurance sold by admitted carriers which is backed by the Florida Insurance Guarantee Agency (FIGA), an instrumentality of the State of Florida, policyholders purchasing surplus lines insurance are exposed to the insurer's credit risk. If a surplus policyholder incurs a covered loss, but the insurer becomes insolvent after issuing the policy, the policyholder will not receive any compensation. Conversely, the holder of a policy issued by an admitted insurer would receive full compensation from FIGA.

18. Unlike insurance sold by admitted carriers, the rates charged and policy used by surplus lines insurers must not be approved by Florida insurance regulators. The regulators review of these forms is focused on protecting the insured policyholder's interests.

19. Recognizing that surplus lines insurance is inherently less desirable than admitted coverage, the Florida Legislature has forbidden Florida licensed insurance agents and brokers from

selling surplus lines insurance to Florida consumers unless comparable coverage cannot be obtained from the admitted market. *See* § 626.916, Florida Statutes.

20. At all material times, appropriate hazard and flood insurance covering Borrower's home was readily available through Florida licensed insurers participating in the admitted market.

## COUNT I - VIOLATION OF THE RESPA

21. Borrower re-alleges and incorporates by reference the allegations in Paragraphs 1 through 20.

22. As part of the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act, Congress enacted amendments to RESPA found at 12 U.S.C. §2605(m) prohibiting mortgage servicers from imposing charges upon borrowers for force-placed insurance products that are not bona fide and reasonable. However, that provision did not become effective until January 10th, 2014 when the Consumer Financial Protection Bureau completed administrative rulemaking and RESPA's implementing regulation 12 C.F.R. §1024 ("Regulation X") took effect.

23. Shellpoint violated 12 U.S.C. §2605(m) with each and every hazard insurance transaction on Borrower's account after January 10th, 2014 because the charges for the overpriced surplus lines force-placed insurance on Borrower's account are not reasonable.[1]

24. As a result of Shellpoint's imposition of unreasonable charges for force-placed insurance, Borrower has been damaged by unlawful and inflated insurance charges imposed upon his account. These charges have caused or exacerbated the default giving rise to the pending foreclosure lawsuit.

---

[1] Because the flood insurance appears to be exempt from RESPA under 12 C.F.R. §1024.37 a.2.i, Borrower's RESPA claims are limited to the hazard insurance transactions.

25. Shellpoint procured this insurance through a standing arrangement with either the insurer, or its agent, whereby it obtains insurance coverage for all the properties within its servicing portfolio. Accordingly, Shellpoint's violation of 12 U.S.C. §2605(m) represents a pattern and practice inconsistent whereby charges for surplus lines insurance is applied to every borrower's account whenever Shellpoint, or its subcontractors, determine that the borrower has failed to maintain voluntary coverage. The consistent use of expensive surplus lines insurance represents a pattern and practice whereby obtains force-placed insurance that is not reasonably priced in violation of its RESPA obligations.

26. Under 12 U.S.C. §2605(f), Borrower is entitled to an award of actual damages, representing the difference in price between admitted insurance coverage that could be lawfully purchased within the state of Florida and the surplus insurance policy procured by Shellpoint, statutory damages, attorneys fees, and litigation costs as a result of Shellpoint's violation of 12 U.S.C. §2605(m) described above.

WHEREFORE, Borrower demands trial by jury and respectfully requests that this Honorable Court enter final judgment in his favor in the total amount of his damages, including statutory damages, as determined at trial together with an award of reasonable attorneys' fees and taxable costs.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all claims so triable.

Respectfully Submitted,

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1999 N. UNIVERSITY DRIVE STE. 213
CORAL SPRINGS, FL 33071
Phone: (954) 942-5270
Fax: (954) 942-5272
Email: jgolant@jeffreygolantlaw.com

By: /S/ **JEFFREY N. GOLANT, ESQ.**
Fla. Bar No.: 0707732
*Counsel for Plaintiff Pedro Soltura*